IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:09-CV-64-D

| | |
|---|---|
| AMERICAN GENERAL LIFE INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) **ORDER** |
| TONYA BUCK CANNON, Individually and as the Administratrix of the Estate of Ricky Buck, | ) ) ) ) |
| Defendant, | ) |
| v. | ) ) |
| WAYLAND J. HARDEE, | ) ) |
| Third-Party Defendant. | ) |

Tanya Buck Cannon ("defendant" or "Cannon") seeks to recover $1,000,000 under the reinstated life insurance policy of her deceased father, Ricky Lee Buck ("decedent" or "Buck"). American General Life Insurance Company ("plaintiff" or "American General") issued the policy and brought this action against Cannon seeking rescission of the policy based on misrepresentations that Buck made in his policy reinstatement application. Cannon counterclaimed for breach of contract and filed a third-party complaint for breach of contract and negligence against the insurance agent, Wayland J. Hardee ("Hardee"), who helped Buck complete the reinstatement application. Cannon contends that Hardee failed to complete accurately Buck's reinstatement application.

As explained below, the court denies Cannon's motion for summary judgment [D.E. 27], grants American General's motion for summary judgment [D.E. 46], grants Hardee's motion for summary judgment [D.E. 49], and denies as moot American General's motion for judicial notice [D.E. 35].

I.

On December 12, 2005, American General issued life insurance policy YME0211778 (the "policy") to Buck. After Buck failed to make premium payments, the policy lapsed. See Letter from American General Customer Service Center to Ricky L. Buck (July 15, 2007), Records Cust. Am. Gen. Aff. Ex. D. American General notified Buck of the lapse and, on August 12, 2007, terminated the policy. See id.; Letter from American General Customer Service Center to Ricky L. Buck (Aug. 12, 2007), Records Cust. Am. Gen. Aff. Ex. D. On October 1, 2007, after receiving an inquiry from Buck, American General sent him a blank application for reinstatement of the policy. See Letter from American General Customer Service Center to Ricky L. Buck (Oct. 1, 2007), Records Cust. Am. Gen. Aff. Ex. D. In the cover letter, American General told Buck that to apply for reinstatement he must complete the reinstatement application, sign it, and submit a check for $2,605.20 for the overdue premium payments. Id. On December 5, 2007, American General received a completed reinstatement application for the policy and a check from Buck in the amount of $2,614.13. Sepanski Aff. ¶ 5.

On December 11, 2007, American General mailed a copy of the completed reinstatement application to Buck and asked that he provide the name and contact information of the physician who prescribed his blood pressure medication, as well as the reason for and outcome of his last appointment with that physician. Letter from American General Customer Service Center to Ricky L. Buck (Dec. 11, 2007), Records Cust. Am. Gen. Aff. Ex. D; see Sepanski Aff. ¶¶ 6–16. On January 28, 2008, after receiving no response to its letter of December 11, 2007, American General notified Buck that if he failed to respond by February 28, 2008, American General would close the application for reinstatement. Letter from American General Customer Service Center to Ricky L. Buck (Jan. 28, 2008), Records Cust. Am. Gen. Aff. Ex. D. On March 26, 2008, American General notified Buck that it had not received the requested information and that its underwriting committee was unable to approve reinstatement of his policy. Letter from American General Customer Service

2

Center to Ricky L. Buck (Mar. 26, 2008), Records Cust. Am. Gen. Aff. Ex. D. However, American General advised Buck that it would reconsider the reinstatement application if Buck would forward his complete medical records to American General within three weeks. Id.

Shortly thereafter, American General received medical records from Dr. Mark Warren concerning Buck. See Maio Dep. 12 (Apr. 15, 2010). According to Hardee, Buck obtained the medical records from his doctor, gave them to Hardee, and Hardee mailed them to American General. See Hardee Dep. 38–39. The records did not allude to or contain information about the charge against Buck for driving while impaired ("DWI") in May 2007 or Buck's treatment at Pitt County Memorial Hospital for a mental disorder and alcohol abuse in June 2007. See Maio Dep. 22–23 (Jan. 12, 2010). Dr. Warren's records concerning Buck's medical appointment on May 14, 2008, indicate that Buck had "[a]lcoholism with withdrawal" for which Dr. Warren prescribed Librium. Records Cust. Phys. East Aff. Ex. A at 3; see Records Cust. Phys. East Aff. ¶ 2.

On June 3, 2008, American General reinstated Buck's policy, with life insurance coverage in the amount of $1,000,000. See Pl.'s Mem. Opp'n Summ. J. Ex. I at 4 [hereinafter "Policy"]. The reinstated policy states that American General "will not contest a reinstatement after the reinstatement has been in force during the lifetime of the insured for two years from the date of the reinstatement" and that "[i]f [American General] contest[s] a reinstatement, [it] will contest only statements made in the reinstatement application." Id. at 6.

In the reinstatement application, American General requested information concerning Buck's health history. The person completing Buck's reinstatement application answered "No" to the following questions: (1) "Have you ever sought or received advice, counseling or treatment by a medical professional for the use of alcohol or drugs, including prescription drugs?" (2) "In the past five years, have you been charged with or convicted of driving under the influence of alcohol or drugs or had any driving violations?" (3) "Have you ever been diagnosed as having or been treated for, or consulted a licensed health care provider for . . . . [m]ental or nervous condition or disorder

3

of bones, muscles, or joints?" Records Cust. Am. Gen. Aff. Ex. A at 2–3 [hereinafter "Reinstatement Application"].[1]

On September 27, 2008, Buck died. See Compl. ¶ 22. According to the autopsy report, the immediate cause of his death was "Oxymorphone Toxicity." See id. ¶ 23. Cannon is the beneficiary of Buck's reinstated policy, and she filed a claim for benefits. Countercl. ¶ 12. During its contestability investigation, American General obtained copies of Buck's criminal and medical records. The criminal records show that in May 2007, Buck was charged with DWI. See Certified Driving Record 3; Records Cust. Pitt Co. Mem'l Hosp. Ex. A. In addition, the medical records reveal that in June 2007, Buck's mother had him involuntarily committed to Pitt County Memorial Hospital to be treated for alcohol abuse, depression, and endorsing suicidal ideations. Records Cust. Pitt Co. Mem'l Hosp. Ex. A. Buck was assessed to have "[a]djustment disorder with depressed mood" and "[s]ubstance induced mood disorder," and assessed to be at "at least low-to-moderate risk for suicide." Id. at 7.

On March 30, 2009, after reviewing Buck's criminal and medical records, American General denied Cannon's claim and advised her that, because the answers in Buck's reinstatement application were false, it was rescinding and voiding the policy. See Compl. ¶ 33; Countercl. ¶ 13. American General attempted to return the premium payments that had been made for the policy. See Compl.

---

[1]Cannon argues that the court may not consider the copy of the reinstatement application that American General received on December 5, 2007, because she has "questioned the authenticity of the handwriting and signature" on the reinstatement application. See Def.'s Mem. Supp. Summ. J. 9–10. However, "[a] duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." Fed. R. Evid. 1003. Here, Cannon's assertion that Buck himself did not write on or sign the reinstatement application does not call into question whether the copy is what it purports to be: a copy of the reinstatement application submitted to American General by or on behalf of Buck in an effort to reinstate his lapsed policy. Cf. United States v. Moore, 710 F.2d 157, 158–59 (4th Cir. 1983) (holding that duplicates were admissible where defendant "introduced no evidence that drew the photocopies' authenticity into doubt"); see also 28 U.S.C. § 1732. Moreover, neither of the two exceptions in Rule 1003 applies. Thus, the court may consider the copy of the reinstatement application.

4

¶ 33.

Hardee, the insurance agent who worked with Buck concerning the reinstated policy, is licensed by the North Carolina Department of Insurance to act as a property and liability insurance agent. See Hardee Aff. ¶¶ 2–3. Hardee "did not have any contract or agreement or special relationship with [American General]." Hardee Resp. to Interrogs. ¶ 6. When American General reinstated the lapsed policy, Hardee received a commission of one-half percent of the policy premium. Hardee Dep. 33.

As for Hardee's role in Buck's insurance application process, Hardee assisted Buck in finding a suitable life insurance policy. According to Hardee, he "would contact a broker, Pilot Insurance Center, and would get several quotes, from which [Hardee] would choose the best one and request an application. Upon receipt, [Hardee] would fill out the application and, assuming everything was in order, the policy would be issued." Hardee Resp. to Interrogs. ¶ 6. Hardee testified that he asked Buck the questions in the reinstatement application, completed the reinstatement application on behalf of Buck, and may have signed Buck's name to the reinstatement application. Hardee Dep. 54, 65. Hardee also testified that he would never "sign someone's name to a document without their knowledge." Id. at 46. Moreover, although Hardee is not "a hundred percent" sure about whether he asked Buck whether he had been treated for alcohol abuse because he completed Buck's reinstatement application four or five years ago, id. at 68–69, Hardee testified that "the answers to the[] [original and reinstatement] applications came from Mr. Buck." Id. at 65–66.

On April 1, 2009, American General filed this action against Cannon seeking recission of Buck's reinstated life insurance policy [D.E. 1]. On May 19, 2009, Cannon filed an answer, counterclaim for breach of contract, and a third-party complaint against Hardee for breach of contract and negligence [D.E. 8]. On June 9, 2009, American General responded in opposition [D.E. 12]. On June 17, 2009, Hardee filed an answer to Cannon's third-party complaint [D.E. 13].

Cannon now seeks summary judgment concerning American General's claims and her breach-of-contract counterclaim [D.E. 28]. American General has responded in opposition and also moves for summary judgment on its claims and Cannon's counterclaim [D.E. 36, 46]. In addition, Hardee seeks summary judgment on Cannon's negligence and breach-of-contract claims against him [D.E. 49]. Finally, American General moves for judicial notice [D.E. 35].

II.

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); see, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment initially must demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quotation omitted and emphasis removed).

In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007). However, "[t]he mere existence of a scintilla of evidence" in support of the nonmoving party's position is not sufficient to defeat a motion for summary judgment; "there must be evidence on which the [fact finder] could reasonably find for the [nonmoving party]." Anderson, 477 U.S. at 252. When considering cross-motions for summary judgment, a court evaluates each motion separately using the standard set forth above. See, e.g., United States v. Bergbauer, 602 F.3d 569, 574 (4th Cir. 2010).

In this case, the court has jurisdiction based on diversity and North Carolina law governs. "Accordingly, as to the disputed legal issue[s], [the court] must determine how the Supreme Court

of [North] Carolina would rule." Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C., 433 F.3d 365, 369 (4th Cir. 2005). "If the Supreme Court of [North] Carolina has spoken neither directly nor indirectly on the particular issue before [the court], [the court is] called upon to predict how [the North Carolina Supreme Court] would rule if presented with the issue." Id. (quotation omitted); Pinnacle Special Police, Inc. v. Scottsdale Ins. Co., 607 F. Supp. 2d 735, 741 (E.D.N.C. 2009).

III.

American General and Cannon agree that the misrepresentations concerning Buck's treatment for alcohol abuse, his DWI, and his treatment for a mental condition were false and material. See Def.'s Mem. Supp. 1–10; Pl.'s Mem. Opp'n 6–7; Maio Dep. 31 (Jan. 12, 2010). Cannon, however, argues that she is entitled to summary judgment on American General's rescission and declaratory-judgment claims and her breach-of-contract counterclaim because there is no evidence that Buck made or was responsible for the material misrepresentations in the reinstatement application. American General disagrees.

An insurer may avoid paying benefits under a policy of life insurance "by showing that the insured made representations which were material and false." Ward v. Durham Life Ins. Co., 325 N.C. 202, 210, 381 S.E.2d 698, 702 (1989) (quotation omitted); see N.C. Gen. Stat. § 58-3-10 (providing that "[a]ll statements or descriptions in any application for a policy of insurance" are deemed "representations" that, "unless material or fraudulent, will not prevent recovery on the policy"). "[A] representation in an application for an insurance policy is deemed material if the knowledge or ignorance of it would naturally influence the judgment of the insurer in making the contract, or in estimating the degree and character of the risk, or in fixing the rate of premium." Goodwin v. Investors Life Ins. Co. of N. Am., 332 N.C. 326, 331, 419 S.E.2d 766, 769 (1992) (quotation omitted and emphasis removed). "Moreover, in an application for a life insurance policy, written questions and answers relating to health are deemed material as a matter of law." Ward, 325

7

N.C. at 210, 381 S.E.2d at 702; see Tharrington v. Sturdivant Life Ins. Co., 115 N.C. App. 123, 127, 443 S.E.2d 797, 800 (1994) (collecting cases).

Under North Carolina law, "an insurer cannot avoid its obligations under a policy when the false answers in the insurance application were inserted by the insurance agent without first propounding any of the questions to the insured." Simpson v. Life Investors Ins. Co. of Am., 367 F. Supp. 2d 875, 879 (M.D.N.C. 2005) (quotation omitted) (applying North Carolina law); see, e.g., N. Nat'l Life Ins. Co. v. Lacy J. Miller Mach. Co., 311 N.C. 62, 74, 316 S.E.2d 256, 264 (1984). "[T]he answers to the unasked questions, if inserted by the agent, without the knowledge of the applicant, in the absence of fraud or collusion between the insured and the agent, will not vitiate the policy of insurance issued pursuant to the information contained therein." Simpson, 367 F. Supp. 2d at 879 (quotation and alteration omitted).

Cannon argues that Hardee failed to ask the reinstatement application questions to Buck and, therefore, must pay her under the policy. See Def.'s Mem. 6–8. In support, Cannon cites Mathis v. Minnesota Mutual Life Insurance Co., 302 F. Supp. 998 (M.D.N.C. 1969). In Mathis, the insurance policy was enforceable because the applicant signed a blank application that was later completed by the agent and submitted to the insurance company without review by the applicant. Id. at 1004 (applying North Carolina law). Similarly, in Heilig v. Home Security Life Insurance Co., 222 N.C. 231, 22 S.E.2d 429 (1942), the agent never spoke with or met the party to be insured. Id. at 233, 22 S.E.2d at 431. Rather, the agent asked the insured's parents some of the questions on the application, and then filled in the answers to the unasked questions himself. Id., 22 S.E.2d at 431. Thus, the policy was enforceable. Id., 22 S.E.2d at 431.

Although the holdings in Mathis and Heilig correctly state North Carolina law, the facts of this case are distinguishable. Here, the only direct evidence concerning the completion and execution of the reinstatement application is Hardee's testimony about his interactions with Buck concerning the reinstatement application. Only Hardee and Buck were present. Hardee testified that

8

he asked the questions in the reinstatement application to Buck and received the answers from "speaking with Ricky [Buck]," and that he had no knowledge of Buck's health or criminal record other than what Buck told him. See Hardee Dep. 32–33, 65–69. Hardee also testified that he has never used a past insurance application to fill out a reinstatement application, because he does not keep the original applications. Id. at 67–68. Furthermore, Hardee testified that Buck authorized him to sign Buck's name to the reinstatement application. See Hardee Dep. 54, 70; Records Cust. Am. Gen. Aff. ¶ 20, Ex. C (check dated May 15, 2008, signed by Buck for balance of premium); cf. Cannon Dep. 90. North Carolina law permits a person to sign a document by adopting his name as written by another. See, e.g., State v. Watts, 289 N.C. 445, 447, 222 S.E.2d 389, 390 (1976); Barrett v. City of Fayetteville, 248 N.C. 436, 439, 103 S.E.2d 500, 502–03 (1958).

In addition to Hardee's unrefuted testimony, the record shows that American General mailed Buck a copy of the completed reinstatement application on December 11, 2007. Letter from American General Customer Service Center to Ricky L. Buck (Dec. 11, 2007), Records Cust. Am. Gen. Aff. Ex. D; see Sepanski Aff. ¶¶ 6–16. Thus, Buck had an opportunity to review the completed reinstatement application before American General reinstated the policy, and Buck was not justifiably ignorant that there were inaccuracies in his reinstatement application. See, e.g., Simpson, 367 F. Supp. 2d at 879–80; Goodwin v. Investors Life Ins. Co. of N. Am., 332 N.C. 326, 330–31, 419 S.E.2d 766, 768–69 (1992).

In opposition to the foregoing evidence, Cannon claims that the signature and written answers in the reinstatement application "do[] not appear to be [Buck's] handwriting." Cannon Dep. 41; see Def.'s Mem. 7–10. Cannon relies on her own knowledge concerning her father's handwriting and the opinion of her handwriting expert Emily Will. See Will Aff.[2] Thus, Cannon asks the court to

---

[2]Cannon also cites the affidavit and deposition of Danny Russell Edwards. However, the single incident about which Edwards testified is not admissible habit evidence. See, e.g., Wilson v. Volkswagen of Am., Inc., 561 F.2d 494, 511–12 (4th Cir. 1977). Hence, the evidence from Edwards adds nothing.

9

infer that Hardee completed the application without consulting Buck. Cannon also argues that American General knew about Buck's alcohol abuse before American General approved the reinstatement application.

In light of the record, no reasonable juror could find that Hardee failed to ask Buck the questions in the reinstatement application before completing it, that Hardee failed to complete the reinstatement application in accordance with Buck's answers, or that Buck failed to authorize Hardee to sign the reinstatement application. See Hardee Dep. 32–33, 54, 65–70. Moreover, no reasonable juror could infer from Cannon's testimony or Will's testimony about Buck's handwriting that Hardee completed the application without propounding the questions to Buck, recording Buck's answers, and obtaining his consent to sign the application. See Anderson, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient [to defeat summary judgment]; there must be evidence on which the jury could reasonably find for the [nonmovant].").

As for whether American General knew about the false information in Buck's reinstatement application, "material misrepresentations in applications for insurance do not void the policy if the insurer knew the facts surrounding the misrepresentations at the time it accepted the application and issued its policy based thereon." Ward, 325 N.C. at 210, 381 S.E.2d at 702. Furthermore, "[k]nowledge of facts which the insurer has or should have had constitutes notice of whatever an inquiry into such facts would have disclosed and is binding on the insurer." N. Nat'l Life Ins. Co., 311 N.C. at 75, 316 S.E.2d at 264. "Whatever puts a person on inquiry amounts in law to 'notice' of such facts as an inquiry pursued with reasonable diligence and understanding would have disclosed." Id. at 75, 316 S.E.2d at 264–65.

The records from Dr. Warren concerning Buck's medical appointment on May 14, 2008, state that Buck had "[a]lcoholism with withdrawal" for which Dr. Warren prescribed Librium. Records Cust. Phys. East Aff. Ex. A at 3. Thus, American General was on inquiry notice that Dr. Warren

had treated Buck for alcohol abuse in May 2008. See Records Cust. Phys. East Aff. ¶ 2 (certifying that the records concerning the appointment of May 14, 2008, constitute "all" of the medical records that Physicians East possesses that pertain to Buck); Maio Dep. 21–22 (Jan. 12, 2010) (acknowledging that Buck authorized American General to collect medical records and that, on Buck's reinstatement application, Dr. Mark Warren was identified as a physician who treated Buck); see also N. Nat'l Life Ins. Co., 311 N.C. at 75, 316 S.E.2d at 264–65. However, Buck's medical records that American General received before reinstating the policy did not allude to or contain information about Buck's May 2007 DWI or his June 2007 treatment at Pitt County Memorial Hospital for a mental condition and for alcohol abuse. See Maio Dep. 22–23 (Jan. 12, 2010). Moreover, the notice about Dr. Warren's May 2008 treatment of Buck for alcohol abuse does not defeat the undisputed evidence that when American General reinstated Buck's policy on June 3, 2008, American General did not know about Buck's May 2007 DWI or Buck's June 2007 involuntary hospitalization for a mental condition and alcohol abuse. See Maio Dep. 22–23 (Jan. 12, 2010); cf. Hardee Dep. 33.

Accordingly, the record shows that (1) Hardee asked Buck the questions at issue in this case and completed the reinstatement application in accordance with Buck's responses; (2) Hardee was authorized to sign Buck's name to the reinstatement application; and (3) American General did not know about Buck's DWI or his involuntary hospitalization for a mental condition and alcohol abuse when it reinstated the policy. Cannon has failed to raise a genuine issue of material fact as to these issues and her motion for summary judgment [D.E. 27] is denied. Moreover, in light of the record, Buck failed to comply with the conditions precedent in the policy necessary to effect coverage. See, e.g., Petty v. Pac. Mut. Life Ins. Co., 212 N.C. 157, 162, 193 S.E. 228, 231 (1937); accord Wise v. Am. Gen. Life Ins. Co., 459 F.3d 443, 447–48 (3d Cir. 2006); Old Line Life Ins. Co. of Am. v. Garcia, No. 02-40239, 2006 WL 2828589, at *7 (E.D. Mich. Sept. 29, 2006). Thus, the court grants summary judgment to American General on its rescission and declaratory-judgment claims and

Cannon's breach-of-contract counterclaim [D.E. 46].

IV.

Cannon filed a third-party complaint against Hardee for negligence and breach of contract [D.E. 8]. Hardee denies liability and seeks summary judgment [D.E. 49].

As for her negligence claim, Cannon argues that Hardee negligently failed to complete Buck's reinstatement application correctly. Third-Party Compl. ¶¶ 10, 15–18. As for her breach-of-contract claim, Cannon argues that Hardee breached his contract with Buck to secure life insurance because Hardee did not complete the reinstatement application correctly. Id. ¶¶ 16–17, 19–23.

As discussed, Cannon has failed to offer evidence to show that Hardee did not obtain the answers to the reinstatement application from Buck and complete the reinstatement application in accordance with Buck's answers. Hence, Cannon has failed to "come forward with specific facts showing" that there is a triable issue concerning Hardee's alleged negligent or incorrect completion of Buck's reinstatement application, and Hardee is entitled to summary judgment. See Anderson, 477 U.S. at 252; see also Camalier v. Jeffries, 340 N.C. 699, 706, 460 S.E.2d 133, 136 (1995).

V.

Accordingly, the court DENIES Cannon's motion for summary judgment [D.E. 27], GRANTS American General's motion for summary judgment [D.E. 46], GRANTS Hardee's motion for summary judgment [D.E. 49], and DENIES as moot American General's motion for judicial notice [D.E. 35].

SO ORDERED. This _2_ day of June 2010.

JAMES C. DEVER III
United States District Judge